James Hawkins, SBN 192925
james@jameshawkinsaplc.com
Gregory Mauro SBN 222239
greg@jameshawkinsaplc.com
JAMES HAWKINS, APLC
9880 Research Drive, Suite 200
Irvine, CA. 92618
Tel: 949-387-7200

Jason J. Thompson (*pro hac vice anticipated*)
jthompson@sommerspc.com
Jesse L. Young (p*ro hac vice anticipated*)
jyoung@sommerspc.com
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone: (248) 355-0300
Facsimile: (248) 436-8453

*Counsel for Plaintiff and Proposed Class
and Collective Members*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TYRELL GLASS**, **DUSTIN SCHNATZ**, and **JORDAN TERRADO**, individually and on behalf of all other similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **FMM ENTERPRISES, INC., EC LENDING, LLC**, **GTPD ENTERPRISES, INC., PREMIER DOCUMENTS, LLC, d/b/a MACKLOCK NATIONAL** | Case No.: **'17 CV 563 JAH KSC** <br><br><br> **FLSA COLLECTIVE ACTION/ CLASS ACTION COMPLAINT AND JURY DEMAND** |

**CREDIT, LLC**, **CYNTHIA WALSH**,
**RYAN MCAWEENEY**, **NEIL
BILLOCK**, and **DOES 1-10**, jointly
and severally, as

      Defendants.

Plaintiffs, Tyrell Glass, Dustin Schnatz, and Jordan Terrado (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective/Class Action Complaint against Defendants FMM Enterprises, Inc., EC Lending, LLC, GTPD Enterprises, Inc., Premier Documents, LLC, d/b/a Macklock National Credit, LLC, Cynthia Walsh, Ryan McAweeney, Neil Billock, and Does 1-10 (hereinafter collectively referred to as "Defendants"), jointly and severally, and state as follows:

<u>**INTRODUCTION**</u>

1.    This is a collective and class action brought for violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"); California Labor Code ("Labor Code"); the California Industrial Welfare Commission Wage Order No. 4; and the California Business & Professional Code section 17200, *et seq.*, as a FLSA § 216(b) collective action and California state-wide class action pursuant to Fed. R. Civ. P. 23(b)(3).

2.    Defendants are in the business of call center services and marketing for companies to consumers via inbound and outbound calls. Examples of Defendants' services include debt relief services and inside sales campaigns.

3.    As part of their business practices, Defendants utilize questionable tactics to generate their leads, including but not limited to sending misleading letters in order to entice distressed consumers to pick up the phone and call.

///

///

4. In order to field these calls, Defendants employed call center employees, referred to herein as call center agents ("Agents"). Defendants employed these Agents, including Plaintiffs, in multiple call center facilities in California and elsewhere.

5. Defendants required their Agents to work a full-time schedule, plus overtime. However, Defendants did not record their Agents' compensable work time as required by law.

6. Instead of paying Agents based on hours worked, Defendants paid their Agents on a contingent, commission-only basis whereby Defendants paid commissions but then "charged back" their Agents for a return of any commissions (up to 100%) on sales that were cancelled within the first six months.

7. Defendants' contingent, commission-only compensation system resulted in Agents not being paid for all time worked, including overtime.

8. In the course of performing their job responsibilities, Defendants' Agents used multiple computer networks, software programs, applications, and phone systems. The time Agents spent booting up and logging into these programs and applications before and after their shifts was compensable because the programs and applications were an integral, indispensable, and important part of the Agents' work and they could not perform their jobs effectively without them.

9. Defendants' Agents performed the same basic job duties and were required to use the same or similar computer networks, software programs, applications, and phone systems.

10. The individuals Plaintiffs seek to represent in this action are current and former Agents who are similarly situated to themselves in terms of their positions, job duties, pay structure, and Defendants' violations of federal and state law.

11. Defendants knew or could have easily determined how long it took for their Agents to complete their work, and Defendants could have properly compensated Plaintiffs and the putative Class for this work, but did not.

12.     Plaintiffs seek a declaration that their rights, and the rights of the putative Class, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties, and award of attorneys' fees and costs to make them whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendants to such illegal conduct in the future.

## JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 29 U.S.C. §216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

14.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because this claim arises from a common set of operative facts and is so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy.

15.     This Court has personal jurisdiction over Defendants because Defendants conducted business in this State, had systematic and continuous ties with this state, and had agents and representatives in this state.  Thus, Defendants have sufficient minimum contacts with or otherwise purposefully avail themselves of the markets in the State of California, or otherwise has sufficient contacts with this District to justify them being fairly brought into court in this District.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)-(d) because Plaintiffs and at least some of the putative Class members worked and were paid in this District and the obligations, liabilities, and breaches complained of herein arose or occurred in this District.  Defendants own, operates, and/or maintain offices, transacts business, employ AGENTSs within the District, or otherwise are found within the District. Defendants are within the jurisdiction of this Court for purpose of service of process.

## **PARTIES**

17. Plaintiff, Tyrell Glass, is a resident of Tampa, Florida. He was formerly employed by Defendants as an Agent in San Diego, California from August 2015 until July 2016, and signed a consent form to join this collective action lawsuit, which is attached hereto as ***Exhibit A***.

18. Plaintiff, Dustin Schnatz, is a resident of Oceanside, California. He was employed by Defendants as an Agent in San Diego, California from August 2015 until December 2015, and has consented to join this collective action lawsuit.

19. Plaintiff, Jordan Terrado, is a resident of El Cajon, California. He was employed by Defendants as an Agent in San Diego, California from April 2016 until October 2016, and signed a consent form to join this collective action lawsuit, which is attached hereto as ***Exhibit B***.

20. Additional individuals were or are employed by Defendants as hourly Agents during the past four years and their consent forms will also be filed in this case.

21. Defendant, FMM Enterprises, Inc., is a California corporation with a service of process address listed as 4875 Viewridge Ave., San Diego, California 92123 and a California Corporate Number of C3554593. Its president and registered agent for service in California is Cynthia Walsh.

22. Upon information and belief, Defendant FMM Enterprises has used a number of assumed names, including but not limited to, "CW Consulting," "SL Consulting," and "AG Cash, Inc."

23. Defendant EC Lending, LLC has the same service of process address as Defendant FMM Enterprises, 4875 Viewridge Ave., San Diego, California 92123 with a California Secretary of State file number 200936310348. Its registered agent for service in California is Corrine Lott, and its managers are listed as Defendants Neil Billock and Ryan McAweeney.

24.     Defendant GTPD Enterprises, Inc. is a California corporation with a service of process address of 4241 Jutland Dr., Ste. 304, San Diego, California 92117 and a California Corporate Number of C3608759.  Its president and registered agent for service in California is Defendant Ryan McAweeney.

25.     Defendant Premier Documents, LLC, d/b/a Macklock National Credit, LLC is a business registered with the State of Colorado, ID #20161300756 and headquartered in San Juan, Puerto Rico.  According to Matlock's website, they "are a company that is in the process of qualifying to do business throughout the United States."  Also, according to Macklock's website, it offers consumers credit services such as credit repair, credit monitoring, and credit validation.  See https://www.macklock.org/index.html (last visited on 3/3/17).  Its registered agent for service in Colorado is The Corporation Company, located at 7700 E. Arapahoe Rd., Suite 220, Centennial, Colorado 80112.   Upon information and belief, Macklock is owned by Defendant Ryan McAweeney.

26.     Upon information and belief, the Defendant companies are part of an extensive corporate "shell game" designed to facilitate sales for Defendants FMM Enterprises, Cynthia Walsh, Neil Billock, and Ryan McAweeney.

27.     Defendant Cynthia Walsh is an individual who is a resident and citizen of California.   Ms. Walsh was involved in and controlled the day-to-day business of Defendants. Ms. Walsh was the operations manager for at least two of Defendants' call centers and directly supervised the Plaintiffs. Ms. Walsh was heavily involved in Defendants' compensation scheme in connection with their Agents.

28.     Defendant Ryan McAweeney is an individual who is a resident and citizen of California. Mr. McAweeney was involved in and controlled the day-to-day business of Defendants. Mr. McAweeney maintained a presence in the call center offices, took part in regular business meetings, and maintained control of Defendants' business operations including Defendants' compensation scheme in connection with their Agents.

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

29.     Defendant Neil Billock is an individual who is a resident and citizen of either California or Puerto Rico. Mr. Billock was involved in and controlled the day-to-day business of Defendants. Mr. Billock maintained a presence in the call center offices, took part in regular business meetings, and maintained control of Defendants' business operations including Defendants' compensation scheme in connection with their Agents.

30.     The Doe Defendants 1-10 in this matter are the entities and/or individuals that, together with the named Defendants, employed Plaintiffs and members of the Class and are thus liable for the violations of the FLSA and possibly for violating other state wage and hour laws. Plaintiffs will seek leave from this Court to further amend this First Amended Complaint to include those claims should the factual record support doing so.

31.     Upon information and belief, Defendants jointly employed hundreds, if not thousands, of Agents – including Plaintiffs – in California and other states during the last four years to perform services which include selling goods and services over the phone.

32.     Plaintiffs are informed and believe, and allege thereon, that Defendants are jointly and severally responsible for the circumstances alleged herein, and proximately caused Plaintiffs and the general public to be subject to the fraudulent, unlawful, unfair, and deceptive acts and practices complained of herein.

33.     At all times herein mentioned, Defendants approved of, condoned, and/or otherwise ratified each and every one of the acts or omissions complained of herein.

34.     At all times herein mentioned, Defendants' acts and omissions proximately caused the complaints, injuries, and damages alleged herein.

## GENERAL ALLEGATIONS

35.     Plaintiff, Tyrell Glass, was employed by Defendants as an Agent in San Diego, California from August 2015 until July 2016.   In that position, he was compensated on a contingent, commission-only basis and typically worked approximately 40 or more hours per week (and more than 8 hours per day).

36. Plaintiff, Dustin Schnatz, was employed by Defendants as an Agent in San Diego, California from August 2015 until December 2015. In that position, he was compensated on a contingent, commission-only basis and typically worked approximately 40 or more hours per week (and more than 8 hours per day).

37. Plaintiff, Jordan Terrado, was employed by Defendants as an Agent in San Diego, California from April 2016 until October 2016. In that position, he was compensated on a contingent, commission-only basis and typically worked approximately 40 or more hours per week (and more than 8 hours per day).

38. Throughout their employment with Defendants, Plaintiffs were required to work a substantial amount of unpaid time, including overtime, as part of their jobs as Agents.

39. Defendants' Agents were responsible for, among other things: (a) booting up their computers and logging into several software programs before taking/making phone calls; (b) remaining on the phones for their entire shift; (c) making outbound calls when no calls are incoming; (d) ensuring that every inbound call is accounted for in Defendants' computer systems; (e) if needed, asking sales managers for additional sales leads to call; and (f) logging out of the computer programs and shutting down their computers.

40. Defendants required their Agents to work rigid schedules, usually consisting of nine (9) hours per day and five to six (5-6) days per week and resulted in overtime hours on a weekly basis.

41. Defendants had strict expectations that their Agents would remain on the phone for their entire shift, every scheduled day, and Defendants threatened discipline if an Agent failed to do so.

42. Defendants did not require their Agents to clock in/out for their shifts and did not otherwise track the Agents' work time through any manual or computerized timekeeping system. Failing to accurately account for and pay for all of the time actually

worked by employees is a clear violation of FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

## Defendants' Compensation System

43.     Defendants' Agents were paid on a contingent, commission-only basis. Under this compensation system, Agents were paid a commission in the range of 1-6% on sales to consumers. The Agents' commission percentage amount was typically determined by the number of months of repayment by the consumer (*e.g.*, 24 months, 36 months, etc.). The shorter the repayment plan, the higher the Agents' commission percentage.

44.     Defendants' paid their Agents on a weekly basis, and pursuant to an alternating schedule of draws and commissions. Defendants' payroll process generally adhered to the following monthly schedule:

   a. <u>Week 1</u>:  salary draw (usually between $800 and $1,000); and

   b. <u>Week 2</u>:  commission check (based on last two weeks of prior month) minus the draw from prior week;

   c. <u>Week 3</u>:  salary draw (usually between $800 and $1,000); and

   d. <u>Week 4</u>:  commission check (based on first two weeks of present month) minus the draw from prior week.

45.     An example of Defendants' compensation system is illustrated through Plaintiff Tyrell Glass's paystubs for the month of March 2016, attached at ***Exhibit C***. Those paystubs show the following payments:

   a. Period Ending March 8, 2017:      $919.95 (draw)
   b. Period Ending March 15, 2016:     $2,128.88 (commission)
   c. Period Ending March 23, 2016:     $1,000.00 (draw)

d. Period Ending March 31, 2016:     $1,778.84 (commission)

46.     However, because Defendants failed to record their Agents' work time, Defendants' compensation system failed to properly account for and compensate Agents for all time worked, including their overtime hours, during each day and during each workweek.

47.     The hours reflected on the Agents' paystubs are not accurate, were contrived by Defendants, and have no relation to the hours the Agents actually worked for Defendants.  To the best of Plaintiffs' knowledge, Defendants either estimated the hours based on work schedules or simply made up the hours.

48.     On September 1, 2015, Defendants implemented a written "chargeback policy," which provided that if any consumer cancelled a sales order within the first five (5) installment payments, it would result in a chargeback of commissions previously credited to the Agent responsible for the sale, as follows:

| # of Payments | Chargeback % of Commission |
|---------------|----------------------------|
| 1-2           | 100%                       |
| 3-4           | 50%                        |
| 5             | 33%                        |

49.     Thus, in the event an Agent's sales were cancelled within the first five (5) installment payments, the chargeback was taken from the Agents' commission check(s).

50.     The chargeback did not show up on the Agents' paystubs.  Instead, Defendants provided a "commission sheet" to the Agents *after* their payroll was submitted which communicated any chargebacks taken against the Agents' commissions. The chargebacks were taken unilaterally by Defendants.

51.     As a result of Defendants' compensation policy, Plaintiffs and all other Agents were deprived of pay for compensable time worked, including overtime.

**Pre- and Post-Shift Off-the-Clock Work**

52.    In addition to their regularly scheduled shifts, Defendants' agents performed pre- and post-shift work that went uncompensated.

53.    Pursuant to Defendants' policies, training and direction, Agents were required to startup and login to various secure computer networks, software programs, and applications in order to access information and software.

54.    The Agents' startup and login process takes substantial time on a daily basis with said time ranging from 10 to 15 minutes per day, or even as much as 30 minutes if technical issues arise. Defendants' Agents were never compensated for time, which directly benefitted Defendants and was an essential part of the Agents' job responsibilities.

55.    Additionally, Defendants' Agents were required to logout of and close down various programs at the end of each shift. The log-out process occurred each shift with said time ranging from 1 to 2 minutes per day.

56.    Moreover, Defendants' Agents frequently handled calls that could last 60 minutes or more past the end of their scheduled shifts and Defendants failed to pay for that work time.

57.    The U.S. Department of Labor recognizes that call center jobs, like those held by Defendants' Agents, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." DOL Fact Sheet #64.

58.    The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre- and post-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions,

computer applications and work-related emails." See *Id.*, at p. 2. Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

## Meal Period Violations

59.     Defendants promised each Agent a one hour unpaid meal period during each shift. However, in reality, Defendants often required Agents to work through unpaid meal periods if there were not enough Agents to cover the phones.

60.     Under the federal law, in order to deduct an unpaid meal period from an employees' compensable time, an employee must be completely relieved of his or her employment duties for the entire lunch break. 29 CFR 785.19(a) states:

> Bona fide meal periods. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

61.     However, Defendants did not provide their Agents with a legitimate bona fide meal period.

62.     Under California law, employers must provide a meal period of at least 30 minutes for every five (5) hours worked. Cal. Lab. Code § 512(a) states:

> An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than

30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

63.     However, Defendants did not provide their Agents with a 30-minute meal period for every five (5) hours worked.

**Defendant Unlawfully Benefitted From Their Agents' Uncompensated Work**

64.     At all relevant times, Defendants directed and directly benefited from the startup and login time, meal period time, and logout time performed by their Agents.

65.     At all relevant times, Defendants controlled the work schedules, duties, protocols, applications, assignments and employment conditions of their Agents.

66.     At all relevant times, Defendants were able to track the amount of time their Agents spent starting up, logging in to, and logging out of Defendants' computer and phone systems; however, Defendant failed to document, track, or pay its Agents for all the work they performed, including off-the-clock work.

67.     At all relevant times, Plaintiffs were non-exempt employees, subject to the requirements of the FLSA and the California Labor Code.

68.     At all relevant times, Defendants used its attendance and adherence policies against its Agents in order to pressure them into arriving early and working off-the-clock.

69.     At all relevant times, Defendants' policies and practices deprived their Agents of wages owed for the pre-shift, meal periods, and post-shift work activities. Because Defendants' Agents typically worked 40 hours or more in a workweek, and more than eight (8) hours per day, Defendants' policies and practices also deprived them of overtime pay.

70.     Defendants knew or should have known that Plaintiffs and other Agents' off-the-clock work was compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendants to establish that it acted in good faith.

71.     As a non-exempt employees, Defendants' Agents were entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

72.     Under FLSA, the regular rate is the "keystone" to calculating the overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945). It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. §778.108.

73.     No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated. 29 C.F.R. §778.109. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id*.

74.     Defendants' contingent, commission-only compensation did not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

75.     A commission-based employee's regular rate of pay is computed by reference to the number of hours the commission payment is intended to compensate. 29 C.F.R. §778.117.

> This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to a guaranteed salary or hourly rate, or on some other basis, and regardless of the method, frequency, or regularity of computing, allocating and paying the commission. It does not matter whether the commission earnings are computed daily, weekly, biweekly, semimonthly, monthly, or at some other interval. The fact that the commission is paid on a basis other than weekly, and that payment is delayed for a time past the employee's normal pay day or pay period, does not excuse the employer from including this payment in the employee's regular rate.

*Id.*

76. There is a statutory presumption that remuneration in any form must be included in the regular rate calculation. The burden is on Defendants to establish that any payment should be excluded. Thus, determining the regular rate starts from the premise that all payments made to Plaintiffs for work performed are included in the base calculation unless specifically excluded by statute.

77. Even "[w]hen the commission is paid on a weekly basis, it is added to the employee's other earnings for that workweek (except overtime premiums and other payments excluded as provided in section 7(e) of the Act), and the total is divided by the total number of hours worked in the workweek to obtain the employee's regular hourly rate for the particular workweek. The employee must then be paid extra compensation at one-half of that rate for each hour worked in excess of the applicable maximum hours standard." 29 C.F.R. §778.118.

78. Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945). The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to rate per hour to determine compliance with the statute.

79. Because Defendants' compensation scheme failed to incorporate the regular rate of pay, Defendants failed to properly compensate Plaintiffs and its other Agents under the FLSA.

80. Under California law, employees are entitled to "no less than one and one-half times the regular rate of pay" for work in excess of eight hours in one workday. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than

twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee. Cal. Lab. Code, § 510(a).

81.     The California Division of Labor Standards Enforcement Manual section 49.2.4.2 provides a reasonable formula for calculating overtime on a flat sum bonus. The flat sum bonus formula set forth in sections 49.2.4.2 and 49.2.4.3 of the Manual, which uses a divisor of straight time, instead of total hours worked to set the regular bonus rate, and a multiplier of 1.5, rather than 0.5, to fix the bonus overtime due, produces "a premium based on bonus" that is necessary to avoid encouraging the use of overtime.

82.     Because Defendants' compensation scheme failed to incorporate the California Division of Labor Standards Enforcement Manual formula, Defendants failed to properly compensate Plaintiffs and its other Agents under the California Labor Code.

83.     Because Defendants' weekly pay period compensation scheme did not pay commissions in the week in which they were earned, Defendants failed to properly compensate Plaintiffs and its other Agents under the California Labor Code. *See e.g.*, *Peabody v. Time Warner Cable, Inc.*, 59 Cal. 4th 662, 663 (Cal. 2014) (An employer may not attribute commission wages paid in one pay period to other pay periods in order to satisfy the minimum earnings prong of the commissioned employee exemption to the overtime requirement in Lab. Code, § 510).

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

84.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> ***All current and former Agents who worked for any Defendants at any time from March 1, 2014 through judgment.***

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

85.    Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated Agents.

86.    Excluded from the proposed FLSA Collective are Defendants' executives, administrative and professional employees, including computer professionals and outside sales persons.

87.    Consistent with Defendants' policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond 40 hours in a workweek.

88.    All of the work that Plaintiffs and the FLSA Collective members performed was assigned by Defendants, and/or Defendants were aware of all of the work that Plaintiffs and the FLSA Collective members performed.

89.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective members.  This policy and pattern or practice includes, but is not limited to:

   a.  willfully failing to pay its employees, including Plaintiffs and the FLSA Collective, for all hours worked including premium overtime wages for all hours worked in excess of 40 hours per workweek; and

   b.  willfully failing to record all of the time that its employees, including Plaintiffs and the FLSA Collective, worked for Defendants' benefit.

90.    Defendants are aware or should have been aware that federal law required them to pay Plaintiffs and the FLSA Collective overtime premiums for all hours worked in excess of 40 per workweek.

91.    Defendants failed to properly maintain timekeeping and payroll records pertaining to the FLSA Collective under the FLSA, 29 U.S.C. 211(c).

92.    Defendants' unlawful conduct was widespread, repeated, and consistent.

93.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

94.     The employment relationships between Defendants and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre-shift startup/login time, unpaid meal period time, and the amount of post-shift log-out/shut-down time owed to each employee – does not vary substantially among the proposed FLSA Collective members.

95.     There are many similarly situated current and former Agents who were underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

96.     This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

97.     Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

98.     Plaintiffs estimates the proposed FLSA Collective, including both current and former employees over the relevant period will include several hundreds, if not thousands, of workers. The precise number of FLSA Collective members should be readily available from a review of Defendants' personnel and payroll records.

**RULE 23 CLASS ACTION ALLEGATIONS**

99.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on their own behalf and on behalf of all similarly situated current and former employees of Defendants who are or were employed at any time in the last four years.  Plaintiffs propose the

following class definition:

*All current and former Agents who worked for any Defendants in California at any time from March 1, 2013 through judgment.*

Plaintiffs reserve the right to amend the putative class definition if necessary.

100. Plaintiffs share the same interests as the putative class and will be entitled under the California Labor Code to unpaid overtime compensation, attorneys' fees, and costs and lost interest owed to them under nearly identical factual and legal standards as the remainder of the putative class.

101. The putative Class meets the numerosity requirement of Rule 23(a)(1) because, during the relevant period, Defendants employed hundreds, if not thousands, of Agents throughout California. The Class members are so numerous that joinder of all such persons is impracticable and that the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendants' personnel, scheduling, time, phone, and payroll records, and from input received from the putative Class members.

102. The putative Class meets the commonality requirement of Rule 23(a)(2) because, during the relevant period, Defendants engaged in a common course of conduct that violated the legal rights of Plaintiffs and the Class. Individual questions that Plaintiffs' claims present, to the extent any exist, will be far less central to this litigation than the numerous material questions of law and fact common to the Class, including but not limited to:

    a. Whether Defendants engaged in a policy or practice of failing to pay each Class member regular wages for each non-overtime hour worked.

    b. Whether Defendants engaged in a policy or practice of failing to pay each Class member overtime compensation for each overtime hour worked;

c. Whether Defendants violated Labor Code sections 221 and 223 by making unlawful deductions to Class members' wages;

d. Whether Defendants failed to provide each Class member with at least one 30-minute meal period on every workday of at least 5 hours and a second 30-minute meal period on every workday of at least 10 hours as required by the California Employment Law and Regulations;

e. Whether Defendants violated sections 201 to 203 of the Labor Code by willfully failing to pay all wages and compensation due each Class member who quit or who was discharged;

f. Whether Defendants violated section 226 of the Labor Code by willfully failing to provide accurate itemized wage statements showing the number of hours worked by each Class member and the corresponding hourly rate;

g. Whether Defendants violated sections 1174 and 1175 of the Labor Code and the applicable Industrial Welfare Commission Orders by failing to maintain records pertaining to when Class members began and ended each work period, the total daily hours worked, and the total hours worked per pay period;

h. Whether Defendants violated section 510 of the Labor Code and the applicable Industrial Welfare Commission Orders by failing to accurately calculate regular rates of pay for overtime purposes;

i. Whether Defendants violated section 2208 of the Labor Code by willfully failing to reimburse each Class member any reasonable business expenses incurred;

j. Whether Defendants were unjustly enriched by the work and services performed by Class members without compensation;

k. Whether Defendants engaged in unfair business practices in violation of Business and Professions Code section 17200, *et seq.*; and

l. Whether Defendants should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating

California state law.

103. The status of all individuals similarly situated to Plaintiffs raises an identical legal question: whether Defendants' Agents are entitled to back wages, including overtime.

104. The putative Class meets the typicality requirement of Rule 23(a)(3) because Plaintiffs and the putative Class members were all employed by Defendants and performed their job duties without receiving wages, including overtime wages, owed for that work.

105. The Class meets the adequacy requirement of Rule 23(a)(4) because there is no apparent conflict of interest between Plaintiffs and the putative Class members, and because Plaintiffs' attorneys have successfully prosecuted many complex class actions, including wage and hour class and collective actions, and will adequately represent the interests of Plaintiffs and the putative Class members.

106. The putative Class meets the predominance requirement of Rule 23(b)(3), because issues common to the Class predominate over any questions affecting only individual members, including but not limited to, those listed above.

107. The Class meets the superiority requirement of Rule 23(b)(3) because allowing the parties to resolve this controversy through a class action would permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.

108. Given the material similarity of the Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds or even thousands of identical actions. Individual litigation of the legal and factual issues raised by Defendants' conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision

of the putative Class's claims, create significant economies of scale for the Court and the parties and result in a binding, uniform adjudication on all issues.

**COUNT I**

**VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.**

**FAILURE TO PAY OVERTIME WAGES**

109.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

110.     At all times relevant to this action, Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

111.     At all times relevant to this action, Plaintiffs were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

112.     Plaintiffs and the FLSA Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

113.     Defendants are not "retail or service establishments" as defined by 29 U.S.C. § 213(a)(2) of the FLSA.

114.     Plaintiffs either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

115.     At all times relevant to this action, Defendants "suffered or permitted" Plaintiffs and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

116.     At all times relevant to this action, Defendants required Plaintiffs and the FLSA Collective members to perform off-the-clock work each shift, but failed to pay these employees the federally mandated overtime compensation for this work.

117.     The off-the-clock work performed every shift by Plaintiffs and the FLSA Collective members is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

118.     In workweeks where Plaintiffs and other FLSA Collective members worked

40 hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage. 29 U.S.C. § 207.

119. Defendants' violations of the FLSA were knowing and willful. Defendants knew or could have determined how long it took for their Agents to perform their off-the-clock work. Further, Defendants could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but did not.

120. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, each employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

<u>**COUNT II**</u>

<u>**VIOLATION OF CALIFORNIA LABOR CODE §§ 510, 1194, 1198**</u>
<u>**AND IWC WAGE ORDER 4 – FAILURE TO PAY OVERTIME**</u>

121. Plaintiffs re-allege and incorporate all previous paragraphs herein.

122. At all relevant times, Defendants regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to its employees, especially overtime compensation.

123. At all relevant times, Plaintiffs and the Class regularly performed non-exempt work and were thus subject to the overtime requirements of California law.

124. Labor Code §§ 510 and 1198 and Industrial Welfare Commission ("IWC") Wage Order No. 4 § 3(A) provide that: (a) employees are entitled to compensation at the rate of one and one-half times their regular rate of pay for all hours worked in excess of eight (8) hours in a workday up to twelve (12) hours in a workday, in excess of forty (40) hours in a workweek, and for the first eight (8) hours of work on the seventh (7th) consecutive day or a workweek; and (b) employees are entitled to compensation at the

rate of twice their regular rate of pay for all hours worked in excess of twelve (12) hours in a workday, and in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

125.   At all relevant times, Plaintiffs and the Class regularly worked in excess of eight (8) hours in a workday and/or in excess of forty (40) hours in a workweek.

126.   At all relevant times, Defendants failed and refused to pay Plaintiffs and the Class members for any and all hours actually worked in excess of the scheduled shift.

127.   Defendants intentionally, maliciously, fraudulently and with the intent to deprive the Class of their ability to earn a living so as to reduce their labor costs, knowingly and willingly implemented a scheme or artifice to avoid paying overtime by reducing the rate of pay to Plaintiffs and other Class members who worked overtime hours.

128.   Plaintiffs and the Class were entitled to receive overtime compensation at their lawful regular rate of pay, including the shift differential where applicable. Defendants' failure to pay lawful premium overtime wages, as alleged above, was a willful violation of Labor Code §§ 510, 1198, and IWC Wage Order No. 4.

129.   Wherefore, Plaintiffs demand payment of the unpaid balance of the full amount of wages due for unpaid time worked, as well as overtime premiums owing, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194 and 1194.2 as a result of Defendants' failure to pay for all time worked and such premium compensation, as is required under California law.

## COUNT III
## VIOLATION OF CALIFORNIA LABOR CODE §§ 221 and 223
## UNLAWFUL DEDUCTIONS

130.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

131.   At all relevant times, Defendants regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to its employees, especially overtime

compensation.

132. Defendants made deductions from Plaintiffs' and the Class members' paychecks in the amount of the overtime premiums earned by the employee during the pay period so as to avoid paying overtime compensation.

133. Labor Code § 221 provides it is unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by employer to employee.

134. Labor Code § 223 provides that where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract. Labor Code section 225 further provides that the violation of any provision of Labor Code §§ 221 and 223 is a misdemeanor.

135. As a result of the conduct alleged above, Defendants unlawfully collected or received from Plaintiffs and the Class part of the wages paid to their employees.

136. Wherefore, Plaintiffs demand the return of all wages unlawfully deducted from the paychecks, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 225.5 and 1194.

## COUNT IV
## VIOLATION OF CALIFORNIA LABOR CODE §§ 226.7 and 512
## FAILURE TO PROVIDE MEAL BREAKS

137. Plaintiffs re-allege and incorporate all previous paragraphs herein.

138. Labor Code § 512, and IWC Wage Order No. 7 § 11(A) and (B) provide that an employer may not employ a person for a work period of more than five (5) hours without providing the employee with a meal period of not less than thirty (30) minutes, and may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than (30) minutes.

139. At all relevant times, Plaintiffs and the Class consistently worked in excess of five (5) or ten (10) hours in a day.

140.   At all relevant times, Defendants regularly required employees to perform work during their first and/or second meal periods without proper compensation. Defendants' practice of requiring employees to perform work during their legally mandated meal periods without premium compensation is a violation of Labor Code §§ 226.7 and 512, and IWC Wage Order No. 7.

141.   Defendants purposefully elected not to provide meal periods to Plaintiffs and Class members, and Defendants acted willfully, oppressively, and in conscious disregard of the rights of Plaintiffs and the Class members in failing to do so.

142.   Plaintiffs are informed and believe Defendants did not properly maintain records pertaining to when Plaintiffs and the Class members began and ended each meal period, in violation of Labor Code §1174 and IWC Wage Order No. 7 § 7(A).

143.   As a result of Defendants' knowing, willful, and intentional failure to provide meal breaks, Plaintiffs and the Class members are entitled to recover one (1) additional hour of pay at the employee's regular rate of pay for each work day that a meal period was not provided, pursuant to Labor Code § 226.7 and 1WC Wage Order No. 7 § 11(D), and penalties, reasonable attorneys' fees, and costs pursuant to Labor Code §§ 218.5.

144.   Defendants' wrongful and illegal conduct in failing to provide Class members with meal breaks or to provide premium compensation, unless and until enjoined by order of this Court, will continue to cause great and irreparable injury to Plaintiffs and the Class members in that Defendants will continue to violate these laws unless specifically ordered to comply with the same. The expectation of future violations will require current and future employees to repeatedly and continuously seek legal redress in order to gain compensation to which they are already entitled. Plaintiffs and the Class members have no other adequate remedy at law to insure future compliance with the laws alleged herein to have been violated.

145.   Wherefore, Plaintiffs demand pursuant to Labor Code Section 227.7(b) that

Defendants pay each Class member one additional hour of pay at the Class member's regular rate of compensation for each work day that the meal period was not provided.

**COUNT V**

**VIOLATION OF CALIFORNIA LABOR CODE § 226 and 1174**

**FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS**

146.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

147.    Labor Code §§ 226 and 1174 provide that every employer shall, semi-monthly or at the time of payment of wages, furnish each employee, either as a detachable part of the check or separately, an accurate, itemized statement in writing showing the total hours worked, and the applicable hourly rates and corresponding total number of hours worked.

148.    At all relevant times, Defendants failed to maintain proper records and furnish Plaintiffs and the Class members, either semi-monthly or at the time of each payment of wages, an accurate, itemized statement conforming to the requirements of Labor Code §§ 226 and 1174.

149.    At all relevant times, Defendants failed to furnish Plaintiffs and the Class members with accurate wage statements in writing, showing: (1) gross wages earned; (2) total hours worked by each respective employee; (3) all deductions; (4) net wages earned; (5) the inclusive dates of the period for which the employee is paid; (6) the name of the employee and only the last four digits of his or her social security number or an employee identification number; (7) the name and address of the legal entity that is the employer; and (8) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate.

150.    Plaintiffs are informed and believe that Defendants knew or should have known that Plaintiffs and the Class members were entitled to receive wage statements compliant with Labor Code § 226 and 1174, and that Defendants willfully and intentionally failed to provide Plaintiffs and the Class members with such accurate,

itemized statements showing, for example, accurate hours and overtime calculations.

151.    Wherefore Plaintiffs demand that Defendants pay each and every Class member fifty dollars ($50.00) for the initial pay period in which the violation occurred and one hundred dollars ($100) for each subsequent violation, up to a maximum of four thousand dollars ($4,000.00) pursuant to Labor Code § 226, as well as reasonable attorneys' fees and costs.

**COUNT VI**

**VIOLATION OF CALIFORNIA LABOR CODE § 2802**

**FAILURE TO INDEMNIFY EMPLOYEES' EXPENSES AND LOSSES**

152.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

153.    California Labor Code § 2802 provides that an employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties.

154.    During all relevant times, Defendants knowingly and willfully violated California Labor Code § 2802 by failing to pay Plaintiffs and members of the California Class who are no longer employed by Defendants all expenses and losses owed as alleged herein.  Defendants are therefore liable to Plaintiffs and members of the California Class for expenses and losses incurred in direct consequence of the discharge of Plaintiffs' duties.

155.    Plaintiffs, individually and on behalf of the members of the California Class, respectfully request that the Court award all expenses and losses due, and the relief requested below in the Prayer for Relief.

**COUNT VII**

**VIOLATION OF BUSINESS AND PROFESSIONS CODE, § 17200, *et seq.***

156.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

157.    Defendants engaged and continues to engage in unfair business practices in California by practicing, employing and utilizing the unlawful practices described above,

including (a) training and directing AGENTSs to work off-the-clock without compensation; (b) making deductions to AGENTSs' paychecks to recover overtime premiums earned by the employee; (c) requiring RNs to work overtime without lawful premium compensation; (d) failing to provide lawful meal breaks or premium compensation in lieu thereof; and (e) failing to provide accurate, itemized wage statements.

158. In addition, the conduct alleged in each of the previously stated causes of action constitute an unlawful and for unfair business practice within the meaning of Business & Professions Code § 17200, *et seq*.

159. As a result of Defendants' conduct, Plaintiffs and the Class have been harmed as described in the allegations set forth above.

160. The actions described above, constitute false, unfair, fraudulent and deceptive business practices within the meaning of California Business & Professions Code § 17200, *el seq.* By and through such unfair, unlawful and/or fraudulent business practices, Defendants obtained valuable property, money and services from Plaintiffs and the Class, and have deprived Plaintiffs and the Class fundamental rights and privileges guaranteed to all employees under California law.

161. Defendants were unjustly enriched by the policies and practices described herein, and those policies and practices conferred an unfair business advantage on Defendants over other businesses providing similar services which routinely comply with the requirements of California law.

162. Plaintiffs seek, on their own behalf, and on behalf of the putative Class members, full restitution of all monies withheld, acquired and/or converted by Defendants by means of the unfair practices complained of herein, as necessary and according to proof, and/or disgorgement of all profits acquired by Defendants by means of the acts and practices described herein.

163. Plaintiffs seek, on their own behalf, and on behalf of other Class members

similarly situated, an injunction to prohibit Defendants from continuing to engage in the unfair business practices complained of herein. Defendants' unlawful conduct, as described above, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Plaintiffs and all Class members in that Defendants will continue to violate these California laws unless specifically ordered to comply with the same. This expectation of future violations will require current and future employees to repeatedly and continuously seek legal redress in order to gain compensation to which they are entitled under California law. Plaintiffs have no other adequate remedy at law to insure future compliance with the California labor laws and wage orders alleged to have been violated herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on their own behalf and on the behalf of the putative Collective and Class members, request judgment as follows:

a.  Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b.  Designating the named Plaintiffs as Representative of the proposed FLSA collective;

c.  Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all those individuals who are similarly situated, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential class members of their rights under the FLSA;

d.  Certifying the proposed Rule 23 Class;

e.  Designating Plaintiffs as representatives of the proposed Rule 23 Class;

f.  Appointing James Hawkins, APLC and Sommers Schwartz, P.C. as Class

Counsel;

g.   Declaring that Defendants willfully violated the Fair Labor Standards Act and its attendant regulations as set forth above;

h.   Granting judgment in favor of Plaintiffs and against Defendants and awarding the amount of unpaid overtime wages calculated at the rate of one and one-half (1.5) of Plaintiffs' regular rate (including the shift differential where applicable) multiplied by all off-the-clock hours that Plaintiffs worked in excess of eight (8) hours per day and/or forty (40) hours per week for the past four years;

i.   Awarding liquidated damages in an amount equal to the amount of unpaid overtime wages found due and owing;

j.   For statutory and civil penalties pursuant to Labor Code §§ 225.5, 226(e), 226.3, and 226.7;

k.   For disgorgement and restitution to Plaintiffs and other similarly effected Class members of all funds unlawfully acquired by Defendants by means of any acts or practices declared by this Court to violate the mandate established by California Business and Professions Code § 17200, *et seq.*;

l.   For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business and Professions Code § 17200, *et seq.*;

m.   For an injunction prohibiting Defendants from engaging in the unfair business practices complained of herein;

n.   For an injunction requiring Defendants to give notice to persons to whom restitution is owing of the means by which to file for restitution;

o.   For actual damages or statutory penalties according to proof as set forth in California Labor Code §§ 226, 1174, and IWC Wage Order No. 7, § 7(A) related to record keeping;

p.   For an order requiring Defendants to show cause, if any there be, why they

should not be enjoined and ordered to comply with the applicable California Industrial Welfare Commission wage orders related to record keeping for Defendants' employees related to same; and for an order enjoining and restraining Defendants and their agents, servants and employees related thereto;

q.   For pre-judgment interest as allowed by California Labor Code §§ 218.6, 1194 and 2802(b) and California Civil Code § 3287 and other statutes;

r.   Awarding civil penalties pursuant to California Labor Code § 2698, *et seq.*;

s.   For reasonable attorneys' fees, expenses, and costs as provided by the FLSA, California Labor Code §§ 218.5, 226(e) and (g), 1194, 2802 and California Code of Civil Procedure § 1021.5; and

t.   For such other and further relief the Court may deem just and proper.

## JURY DEMAND

Plaintiffs, Tyrell Glass, Dustin Schnatz, and Jordan Terrado, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Respectfully Submitted,

Dated: March 22, 2017

By:/s/ Gregory Mauro
Gregory Mauro

James Hawkins, SBN 192925
james@jameshawkinsaplc.com
Gregory Mauro SBN 222239
greg@jameshawkinsaplc.com
JAMES HAWKINS, APLC
9880 Research Drive, Suite 200
Irvine, CA. 92618
Tel: 949-387-7200

Jason J. Thompson (*pro hac vice anticipated*)
jthompson@sommerspc.com
Jesse L. Young (p*ro hac vice anticipated*)
jyoung@sommerspc.com
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone: (248) 355-0300
Facsimile: (248) 436-8453

*Counsel for Plaintiff and Proposed Class
and Collective Members*